IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br> vs.<br><br>MATT TIBBELS,<br>    Defendant. | CASE NO: **4:21MJ3121**<br><br>**DETENTION ORDER** |

On the government's motion, the court held a detention hearing under the Bail Reform Act, 18 U.S.C. § 3142(f). The court concludes the defendant must be detained.

There is a rebuttable presumption that no condition or combination of conditions of release will reasonably assure the defendant's appearance at court proceedings and the safety of the community because there is probable cause to believe the defendant committed a child pornography felony. The defendant has not rebutted this presumption.

Based on the evidence presented and information of record, the court finds by clear and convincing evidence that the defendant's release would pose a risk of harm to the public.

Specifically, the court finds substantial evidence supports the claims against the defendant. On the deleted space of memory devices obtained during the search of defendant's home office, the FBI found 164 images and two videos of child pornography that the National Center for Missing and Exploited Children (NCMEC) had previously recognized as child pornography. But the officers also found 98 images and four videos which were new to law enforcement. These images and videos were found after searching only 0.3% of the total digital memory seized by the government during its search.

Defendant, a computer programmer, used a method of obtaining child pornography images that was highly sophisticated and surreptitious. The defendant

used Freenet software to digitally request encrypted, component blocks of an image from multiple anonymous peer-2-peer (P2P) network users, collect the blocks upon receipt, and reassemble them to create the image.

The average age of the victims depicted in Defendant's collected images is between 6 and 9 years old. As to images and videos not previously seen by (NCMEC), the victims' identities are unknown.

When interviewed by pretrial services, Defendant was asked if he has any minors (under the age of 18) in his life with whom he has contact, Defendant reported "none." But Defendant's home office, where he has worked consistently since the onset of the pandemic, is located in the basement of his home. His wife operates a residential home daycare on the first floor of that home. Defendant cannot exit the home or use the kitchen without entering the first floor. In addition, Defendant has worked as a substitute daycare provider when his wife was unable to watch the children.

Defendant's wife testified that she intends to close the daycare. She also testified that she knew nothing of her husband's receipt and viewing of child pornography. Having observed her as she testified, the court does not find this testimony fully credible. Defendant's wife apparently knew what the officers had seized in the home. After the search was conducted and before the defendant was arrested, SSA John Hallock was contacted by the State of Nebraska, Health and Human Services Division, who stated that under their regulations regarding child abuse and exploitation allegations, they may allow the daycare facility operated by Theresa Tibbels to remain open provided the Defendant is not present. The following day, Mrs. Tibbels notified the parents of the children she cares for and asked them to sign an interim agreement which would allow her to continue watching their children--provided her husband has no contact with the children.

The defendant is now unemployed, and his wife has no income without operating the daycare.

Under the totality of circumstances, Defendant's release to live with his wife in the home that housed the daycare poses a risk of harm. That risk is not sufficiently

ameliorated by being under his wife's third-party supervision. Based on Theresa Tibbels' testimony, prior to his arrest, Defendant was able to hide his child pornography conduct from his wife while she operated a daycare in the same home. Moreover, given his demonstrated computer skills, attempts to delete files, and ability to hide his conduct and contacts, Defendant is not amenable to supervision and monitoring during either pretrial services home visits or by his wife.

As such, I find Defendant poses a risk of harm and I currently know of no conditions which would sufficiently ameliorate the risks posed if the defendant is released. Defendant will be detained.

## Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. The defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States marshal for a court appearance.

Dated October 12, 2021.

BY THE COURT:

s/ Cheryl R. Zwart
United States Magistrate Judge